EOD

09/10/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| S & A RESTAURANT CORP., et al., | § | Case No. 08-41898 |
| | § | Chapter 7 |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| FRONTAGE PROPERTIES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 09-4039 |
| | § | |
| MICHELLE H. CHOW, as Chapter 7 | § | |
| Trustee of Steak and Ale of New | § | |
| Jersey, Inc., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

This matter is before the Court on the Chapter 7 trustee's motion to dismiss the

plaintiff's adversary complaint, as amended, pursuant to Federal Rule of Civil Procedure

12(b)(6), as adopted and applied to this adversary proceeding by Federal Rule of

Bankruptcy Procedure 7012. The plaintiff opposes the Chapter 7 trustee's motion. In

addition, the parties have filed cross-motions for summary judgment. At the conclusion

of a hearing on the Chapter 7 trustee's motion to dismiss on April 5, 2010, the Court took

the matter under advisement in order to prepare a detailed written ruling.

**I. JURISDICTION**

In this adversary proceeding, the plaintiff seeks a declaration, pursuant to 28

U.S.C. § 2201 *et seq*., that an addendum to a lease of commercial property may be

enforced despite the Chapter 7 trustee's rejection of the lease. The plaintiff also seeks an

1

award of its attorneys' fees. The Court has jurisdiction over the adversary and the Chapter 7 trustee's motion to dismiss in accordance with 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O).

## II. PLAINTIFF'S ALLEGATIONS OF FACT

The plaintiff, Frontage Properties, is a New Jersey partnership. The plaintiff owns certain real property located at 1800 Frontage Road in Cherry Hill, New Jersey. The plaintiff leased the property to Steak and Ale of New Jersey, Inc. ("SANJ") pursuant to a Lease Agreement dated April 11, 1977, as amended (the "Lease"). The term of the original Lease was for 20 years, and the Lease contemplated the construction of the restaurant building.

Among other amendments to the Lease, the plaintiff and defendant entered into an Addendum to Lease Agreement (the "Addendum") dated February 4, 1980. The Addendum added paragraph 33 to the Lease. Paragraph 33 is entitled "Lease Modification Fee" and provides that, in the event the Lease expires or SANJ sells or transfers its liquor license, SANJ will pay the plaintiff one half of the fair market value of the license. The plaintiff asserts that, as consideration for the execution of the Addendum, it paid $100,000 to partially fund SANJ's acquisition of a liquor license for use in SANJ's restaurant.

On July 29, 2008, S & A Restaurant Corp. and 44 related entities, including SANJ, filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. On the morning they filed their bankruptcy petitions, the debtors abruptly closed all of their restaurants.

Section 365(a) of the Code provides that, subject to the Court's approval, a Chapter 7 trustee may assume a lease and perform the debtor's obligations thereunder or, alternatively, reject the lease. In a Chapter 7 case, if an unexpired lease of nonresidential real property has not been assumed or rejected within 120 days of bankruptcy, the lease is presumed rejected. *See* 11 U.S.C. § 365(d)(4)(A)(i). The lessor may assert an administrative claim for post-petition obligations arising under the lease pending assumption or rejection. *See* 11 U.S.C. § 503(b)(1)(A).

In this case, the Chapter 7 trustee promptly sent the plaintiff a letter stating that she intended to reject the Lease. The Chapter 7 trustee also filed an emergency motion seeking this Court's approval to reject a number of unexpired leases, including the Lease at issue in this adversary proceeding. The plaintiff did not object. Accordingly, on August 19, 2008, the Court entered an order rejecting the Lease effective as of July 31, 2008 (two days after the petition date).[1] Section 365(g) of the Code states that, except in certain narrowly defined circumstances not present in this case, rejection of an executory contract or unexpired lease constitutes a material breach.

The Court has treated the debtors' various liquor licenses as property of the bankruptcy estate. *See* 11 U.S.C. § 541(a). As the Seventh Circuit said in *In re Barnes*, 276 F.3d 927, 928 (7th Cir. 2002), "the few cases to address the issue hold that a liquor license, provided it is salable, is indeed property within the meaning of section 541 of the Bankruptcy Code." *Accord: In re The Ground Round, Inc.*. 482 F.3d 15 (1st Cir. 2007) (addressing Pennsylvania liquor license laws). *See also Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943 (N.J. 2010) (holding that an agreement to sell a liquor license is

---

[1] The Lease otherwise would have terminated by its own terms on March 6, 2009 pursuant to a December 22, 2003 letter agreement, which extended the term of the Lease to March 6, 2009.

3

specifically enforceable subject to the necessary approval of state authorities).   The Chapter 7 trustee has actively marketed several liquor licenses issued by the State of New Jersey.   The Chapter 7 trustee requested and received this Court's approval to sell some of these licenses for significant sums of money.   However, the Chapter 7 trustee has not filed a motion to sell SANJ's license.

On March 9, 2009, the plaintiff filed a claim in SANJ's bankruptcy case.   The plaintiff did not use the official proof of claim form.   *See* Official Bankruptcy Form 10.   The document filed by the plaintiff is entitled "Notice of Claim of Inchoate Equitable Lien on Proceeds of Sale of Plenary Consumption License for Premises Located in Cherry Hill Township, Camden County, New Jersey."   The plaintiff does not include the amount of the claim but states: "The inchoate equitable lien is claimed pursuant to that certain Lease Agreement dated April 11, 1977, as amended …."

The plaintiff initiated this adversary proceeding by filing its original complaint on March 10, 2009.   On December 8, 2009, the Chapter 7 trustee moved for summary judgment.   Approximately two weeks later, on December 23, 2009, the plaintiff filed its own request for summary judgment.   On the same date, December 23, 2009, the plaintiff filed a motion for leave to amend its complaint.

The Court heard the plaintiff's motion for leave to amend its complaint on January 25, 2010.   At the conclusion of the hearing, the Court granted the plaintiff's motion, but also ordered that the plaintiff comply with the pleading requirements of Federal Rule 8 by eliminating the extraneous arguments and case authority cited in the proposed amended complaint.   The plaintiff filed its amended complaint on February 8,

2010.  The Chapter 7 trustee now seeks to dismiss the plaintiff's amended complaint for the same reasons expressed in her request for summary judgment.

## III. CONTENTIONS OF THE PARTIES

In its complaint, as amended, the plaintiff asks the Court to declare that it is entitled to payment of one-half of the proceeds from any future sale of the liquor license formerly used at SANJ's restaurant located in located in Cherry Hill, New Jersey.  The plaintiff seeks a declaratory judgment that the Lease and Addendum are severable contracts.  Although the plaintiff referred to Addendum only as an amendment to the Lease in its notice of claim, the plaintiff describes the Addendum as the "Divisible Agreement" in its amended complaint.  The plaintiff asserts that the "Divisible Agreement" is enforceable despite the Chapter 7 trustee's rejection of the Lease.  The plaintiff further asserts that it was in a "de facto partnership/joint venture" relationship with SANJ that entitles it to specific performance of the "Divisible Agreement."  Alternatively, the plaintiff asserts claims for (i) an equitable lien on the proceeds of SANJ's liquor license, and (ii) imposition of a constructive trust on future proceeds of the liquor license.

In her motion to dismiss, the Chapter 7 trustee argues that the plaintiff's complaint must be dismissed because the Lease, which includes the Addendum, has been rejected pursuant to § 365(a) of the Code.[2]  The Chapter 7 trustee argues that any claim

---

[2] Section 365 provides in pertinent part:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease--(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition ….

11 U.S.C. § 365(g).

for damages caused by the rejection is treated under § 365(g) of the Code as an unsecured claim.  The Chapter 7 trustee asserts that New Jersey law prohibited the plaintiff from obtaining an enforceable property interest in the liquor license at issue, *see* N.J.S.A. § 33:1-26,[3] and the plaintiff's present claims are simply a vexatious effort to squeeze money from SANJ's bankruptcy estate to the detriment of other unsecured creditors.

## IV. LEGAL ANALYSIS

Federal Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  The ultimate question in a Federal Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007).  The Court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).  The Court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.  *Ashcroft v. Iqball,* -- U.S. --, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Here, the plaintiff references the Lease and Addendum throughout its amended complaint.  These documents are central to the parties' dispute.  The relevant terms of the Lease and Addendum are recited in the plaintiff's amended complaint as well as the Chapter 7 trustee's motion to dismiss.   Although the plaintiff did not attach any

---

[3] The New Jersey legislature originally enacted the New Jersey Alcoholic Beverage Control Statute, N.J.S.A. § 33:1-1 *et seq.*, in 1933.  *See In re Chris Don, Inc.*, 367 F.Supp.2d 696, 698 (D. N.J. 2005).

documents to its amended complaint, the Chapter 7 trustee attached a copy of the Addendum, among other things, to her motion to dismiss.

### A. Plaintiff's Request for Declaratory Judgment that the Lease is Severable

In the amended complaint, the plaintiff seeks a declaratory judgment that the Addendum is a severable contract, separate from the Lease, which the plaintiff may specifically enforce against the estate. (Amended Complaint, ¶¶ 11, 12 and 30.) In support of its request, the plaintiff asserts that the Addendum has not and cannot be rejected under § 365(a) of the Code. (Amended Complaint, ¶ 24.) The plaintiff specifically asserts that the Addendum is not an "executory contract" to which § 365(a) applies. (Amended Complaint, ¶ 21, 22.)

Section 365(a) allows a Chapter 7 trustee, subject to the Court's approval, to assume or reject any executory contract of the debtor. *See* 11 U.S.C. § 365(a). Although the Code does not define the term "executory contract," an executory contract is generally understood as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 MINN. L.REV. 439, 460 (1973). In this case, the plaintiff asserts that it performed all of its obligations under the Addendum by advancing $100,000 to SANJ prior to SANJ's bankruptcy. (Amended Complaint, ¶¶ 18, 21, 22 and 24.) Since only the debtor's performance remains due, the plaintiff argues that the Addendum is not an executory contract that could have been rejected by the Chapter 7 trustee.

As an initial matter, the plaintiff has failed to state a plausible claim for the divisibility of the Lease and Addendum under New Jersey law. "We look to state law for rules governing contract interpretation." *F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ,* 109 F.3d 1084, 1087 (5th Cir. 1997). Thus, the determination of whether a the Lease and Addendum are an indivisible agreement or several agreements in one is a question of New Jersey law. *See, e.g., In re T & H Diner, Inc.,* 108 B.R. 448, 453 (D. N.J. 1989) ("The question of divisibility is a matter of state law."). In New Jersey, the determination of whether a transaction constitutes one or several contracts is primarily based upon the intentions of the parties. *See id.* The intent of the parties "is to be gathered from the language and subject matter of the agreement." *Id.* (quoting *Riddlestorffer v. City of Rahway,* 82 N.J. Super. 423, 428, 197 A.2d 883 (Law Div. 1964)). In addition, intent can "be gathered from all the circumstances surrounding the agreement ...." *Id.* (citing *Dixon v. Smyth Sales Corp.,* 166 A. 103 (E. & A. 1933)). The essential inquiry in determining the divisibility of a transaction is "whether there was a single assent to a whole transaction involving several kinds of property or a separate assent to each of the several things involved." *Id.* (citing *Studzinski v. Travelers Ins. Co.,* 180 N.J.Super. 416, 434 A.2d 1160 (Law Div.1981)).

In this case, the plaintiff alleges that it loaned $100,000 to SANJ so that SANJ could acquire the liquor license for use in its newly-constructed restaurant. (Amended Complaint, ¶ 21.) New Jersey law, however, prohibited SANJ from transferring an interest in the license to the plaintiff or granting the plaintiff a lien on the license to secure repayment of the loan. *See* N.J.S.A. § 33:1-26. Instead, the Addendum provides that SANJ will pay the plaintiff a "Lease Modification Fee" equal to one-half the fair

market value of the liquor license in the event SANJ transfers the liquor license to another entity or the Lease expires. The plaintiff alleges that it does not have a lien on the license itself, but that its interest in the proceeds of the license is nonetheless "secured" by an "inchoate equitable lien on such proceeds." (Amended Complaint, ¶¶ 13, 16).

The facts alleged by the plaintiff show that the parties clearly intended that the Lease Modification Fee would be a component of the Lease itself. The Addendum was a part of and specifically incorporated into the Lease by its own terms. Paragraph 3 of the Addendum states that the parties "desire to add to the Lease, as amended, a new provision…." The new provision was added to the end of the Lease as a new paragraph 33, entitled "Lease Modification Fee."

After SANJ filed its bankruptcy petition, the Chapter 7 trustee promptly notified the plaintiff of her intent to reject the Lease. She also filed a motion requesting this Court's approval to reject the Lease. The plaintiff was aware of the terms of the Lease and the Addendum. The plaintiff was also aware that the Chapter 7 trustee was seeking to reject the entire Lease. *Contrast: In re Cafeteria Operators, L.P.*, 299 B.R. 384 (Bankr. N.D. Tex. 2003) (debtors filed motion to reject master sublease agreement with respect to some, but not all, restaurant facilities covered by the agreement). The plaintiff, however, did not object to the Chapter 7 trustee's motion or raise any issue as to the severability of the Addendum. *Contrast: In re Driscoll,* 401 B.R. 512 (Bankr. S.D. Fla. 2009) (overruling an objection to a rejection motion where the base lease and addendum constituted a single executory contract). The Court entered an order approving the rejection of the Lease on August 19, 2008.

The Addendum – even assuming that it is *severable* from the Lease under New Jersey law – had not been *severed* at the time of rejection.  The plaintiff has not provided this Court with any authority allowing a monetary obligation under a rejected lease to be resurrected and enforced against the bankruptcy estate.[4]  Rather, under § 365(g) of the Code, the Chapter 7 trustee's rejection of the Lease "constitutes a breach of such contract or lease," and the estate is no longer obligated by the contractual terms of the Lease.  Any claim for damages caused by the rejection of the Lease, as amended by the parties, is treated under § 502(g) as occurring prior to SANJ's bankruptcy.[5]

Finally, the premise that the Addendum (somehow) survived the Chapter 7 trustee's rejection of the Lease is a "red herring."  Even if the Court were to accept that the Addendum is a non-executory contract that cannot be and was not rejected by the Chapter 7 trustee, the plaintiff would not obtain an enforceable interest in SANJ's liquor license or its proceeds.  Rather, SANJ's obligation to perform under the Addendum would be treated as a pre-petition, contingent liability of the bankruptcy estate.  As such, the Lease Modification Fee would merely be an unmatured, unsecured "claim" within the

---

[4] The obligation to pay the plaintiff a portion of the proceeds from the sale of SANJ's liquor license is not an obligation of a non-monetary type that courts sometimes find survives rejection of a lease.  *See, e.g., In re Fleming Companies, Inc.*, 325 B.R. 687, 692-93 (Bankr. D. Del. 2005) (holding rejection of executory contract does not void a compulsory arbitration clause); *Sir Speedy, Inc., v. Morse*, 256 B.R. 657, 660 (Bankr. D. Mass. 2000) (finding right to enforce non-competition provision is not a "claim" and is therefore enforceable following rejection of contract).

[5] Section 502(g) provides in pertinent part:

(g)(1) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition….

11 U.S.C. § 502(g).

scope of Code.  *See* 11 U.S.C. § 101(5).[6]  For these and all the foregoing reasons, the Court concludes that the plaintiff has failed to state a plausible claim for a declaratory judgment that the Addendum is separate and divisible from the Lease, is not an executory contract, and was not rejected by the Chapter 7 trustee.

### B.  Plaintiff's Request for Declaratory Judgment that the Lease Created a De Facto Partnership/Joint Venture Agreement

In the amended complaint, the plaintiff alternatively seeks a declaratory judgment that the Addendum constitutes a joint venture or partnership agreement that may be enforced against the estate.  New Jersey's Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. § 42:1A-10.  *See also Pharm. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 59 F. Supp. 2d 408 (D. N.J. 1999) (discussing the requirements for formation of a partnership).  The elements of a joint venture under New Jersey law are virtually identical to those required for a partnership.  *See Kozlowski v. Kozlowski*, 395 A.2d 913 (N.J. Super. Ch. Div. 1978) (discussing the requirements for formation of a joint venture).  The only difference is that the character of the joint venture relationship may be more informal and is usually limited to a single undertaking or transaction.  *See, e.g., Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co., Inc*., 611 F. Supp. 665, 679 (D. N.J. 1985).

"The sine qua non of a joint venture is a contract, express or implied; that is, an actual agreement between the parties."  *Id.*  In addition to the requirement of an actual agreement, the following elements are essential for establishing a joint venture under

---

[6] Section 101(5) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).

New Jersey law: (i) a joint property interest in the subject matter of interest; (ii) a contribution by the parties thereto of money, effort, property, skill, knowledge or other asset to the common undertaking; (iii) an agreement to share in the profits or losses of the venture; and (iv) the right of mutual control of management of the enterprise.  *Id.*

Here, the plaintiff alleges that the parties "created and executed an express contract delineating the property which created a de facto partnership/joint venture …." (Amended Complaint, ¶ 31.)  In particular, the "de facto partnership/joint venture [was] evidenced by a non-executory agreement, that is, the [Addendum]."   (Amended Complaint, ¶ 14.)  The plaintiff asserts that the Addendum created an "inchoate lien" on the proceeds of the liquor license that became effective " 'at the demise of the underlying' Lease relationship."  (Amended Complaint, ¶ 31.)

The plaintiff has not articulated the purpose of the joint venture in the amended complaint.  The plaintiff has not alleged, for instance, that SANJ acquired a liquor license so that it could resell the license and split the profits with the plaintiff.  The plaintiff simply alleges that it paid SANJ "$100,000 toward the cost of obtaining the Liquor License" and, in exchange, SANJ agreed to pay the plaintiff one half of the proceeds of any future sale of the liquor license or one-half of its fair value upon expiration of the Lease.  (Amended Complaint, ¶ 26)  The plaintiff did not stand to share in the profits of SANJ, and stood to share in the losses only to the extent it was not repaid.

If New Jersey law had permitted the plaintiff to acquire an enforceable security interest in the liquor license, that is probably what the parties would have done.  New Jersey law, however, prohibited the plaintiff from obtaining a lien on SANJ's liquor

license.  The New Jersey Alcoholic Beverage Control Statute, N.J.S.A. § 33:1-1 *et seq.*

(the "ABC Law"), provides:

> Under no circumstances, however, shall a license or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except for payment of taxes, fees, interest and penalties imposed by any State tax law for which a lien may attach.

N.J.S.A. § 33:1-26.  As stated by the district court in *In re Chris-Don, Inc.,* 367 F. Supp. 2d 696, 698 (D. N.J. 2005), the purpose of this provision is "to protect the liquor license from any device which would subject it to the control of persons other than the licensee … be it by pledge, lien, levy, attachment, execution, seizure for debts or the like." *Id.* "Under N.J.S.A. § 33:1-26, the 'clear legislative pronouncement that liquor licenses are not property has been consistently supported by case law, all of the cases holding that a license to sell intoxicating liquor is not … a property right.'" *Id.* at 700 (quoting *Sea Girt Rest. & Tavern Owners Assoc. v. Borough of Sea Girt*, 625 F.Supp. 1482, 1486 (D. N.J. 1986)).  The plaintiff's notion of a joint venture would contravene N.J.S.A. § 33:1-26 by giving a creditor rights in and control over the liquor license without obtaining the approval from state authorities that is otherwise required under New Jersey law.  *See* N.J.S.A. § 33:1-25, 26 (addressing the procedures for the transfer of a liquor license and the qualifications required for licensees).  *Cf:* N.J.S.A. 42:1A-39 (addressing the dissolution of a partnership where carrying on the business of the partnership would be unlawful).  *Cf: Thatcher v. Snyder*, 31 N.E.2d 333 (Ill. App. 1st Dist. 1941) (holding that a partnership was illegal where one partner was not licensed as a funeral director).

The plaintiff's allegation that it provided SANJ with financial assistance so that SANJ could acquire a liquor license does not establish a property interest in the liquor

13

license as would be required to establish a joint venture.  The plaintiff's allegation merely shows that it was a lender, not a joint venturer.  Most of the other essential elements required for a joint venture are also missing from the plaintiff's amended complaint.  As previously discussed, the Addendum lacks any agreement for sharing profits and losses of the plaintiff's purported partnership or joint venture with SANJ.  The Addendum also does not make any provision for the parties' "mutual control of management of the enterprise."  *Hellenic Lines, Ltd.*, 611 F. Supp. at 669.  *See also Farris v. Farris Eng'g Corp.*, 81 A.2d 731, 737 (N.J. 1951) (holding that a partnership is created "when persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession or business, and where there is community of interest in the profits or losses.").  Indeed, the plaintiff could not have joint control over SANJ's liquor license without violating New Jersey law.  The only element of a joint venture that the plaintiff alleges in its complaint is the requirement that both parties contribute to the undertaking (*i.e.,* SANJ's acquisition of a liquor license).  The Court, therefore, concludes that the plaintiff's amended complaint does not contain allegations that plausibly support the plaintiff's conclusory assertion that the plaintiff and SANJ were joint venturers.

### C. Plaintiff's Request for Imposition of an "Equitable Lien"

In its amended complaint, the plaintiff alternatively seeks a declaratory judgment that the Addendum created an enforceable, equitable lien on any proceeds from a sale of the liquor license.  The plaintiff does not claim a lien on SANJ's liquor license. (Amended Complaint, ¶ 16.)  Rather, the plaintiff asserts that it is entitled to an equitable lien on the proceeds of the liquor license so that it can be repaid the $100,000 it advanced to SANJ for the acquisition of the license.  The plaintiff asserts that allowing SANJ to use

both the plaintiff funds and the liquor license, without repayment, would be unjust. (Amended Complaint, ¶ 27.)

The determination of whether one holds a valid pre-petition security interest, or lien, is almost universally considered the province of state law. *See, e.g., Batt v. Scully (In re Leahy Realty, Inc.),* 168 B.R. 541, 545 (D. N.J. 1994) (citing *Louis v. Diethorn,* 893 F.2d 648, 650 (3ᵈ Cir. 1990)).[7]   The New Jersey Supreme Court has used two guiding principles in deciding whether to grant an equitable lien. *Id.* at 546. *See also Kramer et al. v. Alston (In re Alston)*, 322 B.R. 265, 269 (Bankr. D. N.J. 2005) (noting same two-factor test for imposing equitable liens).   First, the New Jersey Supreme Court has consistently required that the parties "*intended to give, charge, or pledge property, real or personal, as security for an obligation*" before it will impose an equitable lien. *In re Leahy Realty, Inc.,* 168 B.R. at 546 (emphasis added).   Second, the New Jersey Supreme Court considers "which party is responsible for creating the funds on which the lien is to be imposed." *Id.*

In this case, the Addendum does not contain a promise from SANJ to pay for services rendered by the plaintiff out of a fund created in whole or in part by the plaintiff's efforts. *See In re Leahy Realty, Inc.,* 168 B.R. at 546*.*   The plaintiff does not allege that its actions created or enhanced the value of SANJ's liquor license.   Rather, the alleged value of SANJ's liquor license is primarily a product of the scarcity of liquor licenses in the area.

---

[7] If the Court were to find that the plaintiff has an interest in the proceeds from any sale of SANJ's liquor license either because of an equitable lien or a constructive trust, the ability of the Chapter 7 trustee to avoid such interests would likewise be a matter of state law. *In re Bridge,* 18 F.3d 195, 200 (3ʳᵈ Cir. 1994) ("Although the trustee's strong arm powers arise under federal law, the scope of those avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing"); *In re Alston,* 322 B.R. 265, 268 (Bankr. D. N.J. 2005) (citing *Lewis v. Diethorn,* 893 F.2d 648, 650 (3ʳᵈ Cir. 1990)).

The plaintiff is a voluntary creditor of SANJ. The parties did not and could not give the plaintiff a lien on the liquor license but, instead, crafted the Addendum in an effort to grant the plaintiff the functional equivalent of a lien in exchange for the plaintiff's financial assistance. *Contrast: In re Barnes*, 276 F.3d 927, 929 (7th Cir. 2002) (interpreting Indiana law to allow an involuntary lien on a liquor license in order to enforce lien for wages not paid by bankrupt bar owner). Under these circumstances, the Court concludes that the plaintiff has failed to state a plausible claim for an equitable lien on the proceeds of the liquor license to satisfy its claim. As the *Leahy Realty* court noted, it would be illogical to provide an equitable lien to a party that is not legally entitled to such lien. *In re Leahy Realty, Inc.*, 168 B.R. at 547 n.10.

### D. Plaintiff's Request for Imposition of a Constructive Trust on the Proceeds of the Liquor License.

Alternatively, the plaintiff seeks to impose a constructive trust on the proceeds from any eventual sale of SANJ's liquor license. Assuming New Jersey property law is applicable, as the plaintiff alleges, New Jersey courts have traditionally held that all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property. *D'Ippolito v. Castoro*, 242 A.2d 617, 619 (N.J. 1968). A constructive trust arises where the retention of the property would result in the unjust enrichment of the person retaining it. *Id.* The essential ingredient for imposition of a constructive trust is unjust enrichment. *Warnock Auto. Group, Inc. v. Goldin (In re First Interregional Advisors Corp.)*, 218 B.R. 722, 730 (Bankr. D. N.J. 1997).

16

The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. *Associates Commercial Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986). "A cause of action for unjust enrichment requires proof that the defendant received a benefit and that retention of that benefit without payment would be unjust." *Goldsmith v. Camden County Surrogate's Office*, 975 A.2d 459, 462-63 (N.J. Super. Ct. App. Div. 2009). "The key words are enrich and unjustly. To recover under this doctrine, the plaintiff must prove that the defendant 'received a benefit, and that retention of the benefit without payment therefor would be unjust.'" *Associates Commercial Corp.*, 511 A.2d at 716.

In this case, the plaintiff financed the purchase of an asset. The plaintiff knew it could not acquire a secured interest in the asset under New Jersey law. The plaintiff, therefore, agreed to accept a contractual right to be paid under the Addendum. The plaintiff has not alleged any fraud, mistake, or undue influence surrounding the execution of the Addendum. The plaintiff likewise has not alleged that terms of the Lease and Addendum are unjust.

The Chapter 7 trustee's rejection of the Lease under § 365(a) of the Code does not give rise to a claim for unjust enrichment. Rather, if a landlord is entitled to payment of a post-petition obligation, such as rent, pending the rejection of the lease under § 365(d)(3),[8] it may seek an administrative expense under § 503(b)(1).[9] Under § 503(b)(1),

---

[8] Section 365(d)(3) provides in pertinent part: "The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title…."

[9] Section 503(b)(1) provides in pertinent part:

the most important factor in determining whether to allow the payment of an administrative expense claim is the benefit conferred upon the debtor's estate.  *See, e.g., Broadcast Corp. v. Broadfoot, II (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530, 1532 (11th Cir. 1986) ("'[T]here must be an actual, concrete benefit to the estate before a claim is allowable ...' as an administrative expense.") (quoting *Broadcast Corp. v. Broadfoot,* 54 B.R. 606, 613 (N.D. Ga. 1985)).  As the Second Circuit stated in a case under the Bankruptcy Act, claims are accorded priority in accordance with the "equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him."  *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2nd Cir. 1960).

Here, in the amended complaint, the plaintiff acknowledges it had fully performed all of its obligations under the Addendum prior to the petition date.  SANJ's bankruptcy estate has not received or retained any benefit attributable to the plaintiff.  The Chapter 7 trustee rejected the Lease immediately after SANJ filed its bankruptcy petition in order to avoid incurring any post-petition liability to the plaintiff.  The plaintiff's complaint states no wrongful act on the part of the either the Chapter 7 trustee or SANJ that has deprived the plaintiff of property or resulted in the unjust enrichment of SANJ's bankruptcy estate. The circumstances the plaintiff faces are similar to those faced by nearly every other creditor in these cases, in that all have failed to receive payment from one or more of the debtors.  As explained by the Sixth Circuit in *XL/Datacomp, Inc. v Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994):

---

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--(1)(A) the actual, necessary costs and expenses of preserving the estate ….

11 U.S.C. § 503(b)(1)A).

> The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.

*Id.* at 1452-53. Thus, in this case, the Court concludes that the Chapter 7 trustee's mere breach of contract "is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust." *Presten v. Sailer*, 542 A.2d 7, 15 (N.J. Super. Ct. App. Div. 1988).

### E. Defendant's Request for Attorneys' Fees

The Chapter 7 trustee requests an award of attorneys' fees as the successful party in this action for declaratory relief. *See* 28 U.S.C. § 2202. Section 2202 provides that "necessary or proper relief based on a declaratory judgment ... *may* be granted against any adverse party whose rights have been determined by such judgment …." In addition, a trial court has the equitable power to grant an award of attorneys' fees when a case involves "bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action." *See Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988), and *McDaniel v. Signal Capital Corp.*, 198 B.R. 483, 488 (S.D. Tex. 1996) (party may receive attorney's fees if opponent acted in bad faith).

Here, the Court's conclusion that the plaintiff failed to state a plausible claim for relief does not establish grounds for an award of attorneys' fees. The plaintiff's complaint raised legal arguments that did not have obvious answers, and the plaintiff's request for summary judgment and opposition to the Chapter 7 trustee's motion to dismiss were not vexatious. *See McDaniel v. Signal Capital Corp.*, 198 B.R. 483, 488 (S.D. Tex. 1996) (declining to award fees where the plaintiff's complaint raised

19

"interesting" questions of law and the answers were not obvious). The Court, therefore, concludes that an award of attorneys' fees is not necessary or justified in this case.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff's amended complaint fails to state claims upon which relief can be granted. The plaintiff has had several opportunities to amend its complaint, and further amendment would be futile. Accordingly, the Chapter 7 trustee's motion to dismiss is granted, and this adversary proceeding will be dismissed with prejudice and without leave to amend the amended complaint further. The Court will enter a separate dismissal order consistent with this opinion.

Signed on 9/10/2010

*Brenda T. Rhoades*   SR

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

20